# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| WYNNEWOOD REFINING COMPANY, LLC, COFFEYVILLE RESOURCES REFINING & MARKETING, LLC,<br><br>        Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>        Respondent. | Case No. 22-1015 |

## PETITION FOR REVIEW

Pursuant to Section 307(b) of the Clean Air Act, 42 U.S.C. § 7607(b), and Federal Rule of Appellate Procedure 15(a), Wynnewood Refining Company, LLC, and Coffeyville Resources Refining & Marketing, LLC ("Petitioners") petition this Court for review of the United States Environmental Protection Agency's Final Rule, "Renewable Fuel Standard (RFS) Program: Extension of Compliance and Attest Engagement Reporting Deadlines," 87 Fed. Reg. 5,696 (Feb. 2, 2022) ("Final Rule"). The Final Rule was published in the Federal Register on February 2, 2022. This Petition is timely filed within 60 days of Federal Register publication. See 42 U.S.C. § 7607(b)(1). A copy of the Final Rule is attached as Exhibit A.

2

The Corporate Disclosure Statement required by Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1 is attached as Exhibit B.

| | |
|---|---|
| Dated:  February 4, 2022 | Respectfully submitted, |
| | *s/ Jonathan G. Hardin* |
| | Jonathan G. Hardin |
| | LeAnn Johnson Koch |
| | Alexandra Magill Bromer |
| | Karl J. Worsham |
| | PERKINS COIE LLP |
| | 700 Thirteenth Street, N.W., Suite 800 |
| | Washington, D.C.  20005-3960 |
| | Telephone:  202.654.6297 |
| | Facsimile:  202.654.6211 |
| | JHardin@perkinscoie.com |
| | LeAnnJohnson@perkinscoie.com |
| | ABromer@perkinscoie.com |
| | kworsham@perkinscoie.com |
| | |
| | Attorneys for Petitioners |

# EXHIBIT A

Infants and children, Inventions and patents, Parking, Penalties, Postal Service, Privacy, Reporting and recordkeeping requirements, Seals and insignia, Security measures, Wages.

**Signing Authority**

Denis McDonough, Secretary of Veterans Affairs, approved this document on December 2, 2021, and authorized the undersigned to sign and submit the document to the Office of the Federal Register for publication electronically as an official document of the Department of Veterans Affairs.

**Jeffrey M. Martin,**
*Assistant Director, Office of Regulation Policy & Management, Office of General Counsel, Department of Veterans Affairs.*

For the reasons stated in the preamble, the Department of Veterans Affairs amends 38 CFR part 1 as set forth below:

## PART 1—GENERAL PROVISIONS

■ 1. The authority citation for part 1 is revised to read as follows:

**Authority:** 31 U.S.C. 3711(e); 38 U.S.C. 501, 5701(g) and (i); 38 U.S.C. 5320.

■ 2. Amend § 1.916 by revising paragraph (c) to read as follows:

### § 1.916 Disclosure of debt information to consumer reporting agencies (CRA).

\* \* \* \* \*

(c) Subject to the conditions set forth in this paragraph (c) and paragraph (d) of this section, information concerning individuals may be disclosed to consumer reporting agencies for inclusion in consumer reports pertaining to the individual, or for the purpose of locating the individual. Disclosure of the fact of indebtedness will be made if the individual fails to respond in accordance with written demands for repayment, or refuses to repay a debt to the United States. In making any disclosure under this section, VA will provide consumer reporting agencies with sufficient information to identify the individual, including the individual's name, address, if known, date of birth, VA file number, and Social Security number.

(1) The Secretary has established a minimum threshold for a debt, arising from a benefit administered by the Under Secretary for Benefits or Under Secretary for Health, that the Secretary will report to a consumer reporting agency under 31 U.S.C. 3711.

(2) VA will only report those debts that meet the following standards:

(i) The debt is classified as currently not collectible. For purposes of this paragraph (c)(2)(i), the debt is currently not collectible if VA has exhausted available collection efforts, including, as appropriate, referrals for administrative offset and enforced collection;

(ii) The debt is not owed by an individual who is determined by VA to be catastrophically disabled or has reported to VA a gross household income below the applicable geographically adjusted income limits that would entitle a VA beneficiary to cost-free health care, medications and/or beneficiary travel; and

(iii) The outstanding debt amount is over $25, or such higher amount VA may from time to time prescribe, in accordance with § 1.921.

(3) The minimum threshold set forth in this paragraph (c) will not apply if there is an indication of fraud, misrepresentation, or bad faith on the part of the individual in connection with the debt.

\* \* \* \* \*

[FR Doc. 2022–01496 Filed 2–1–22; 8:45 am]
**BILLING CODE 8320–01–P**

## ENVIRONMENTAL PROTECTION AGENCY

**40 CFR Part 80**

**[EPA–HQ–OAR–2021–0793; FRL–8521.1–01–OAR]**

**RIN 2060–AV57**

### Renewable Fuel Standard (RFS) Program: Extension of Compliance and Attest Engagement Reporting Deadlines

**AGENCY:** Environmental Protection Agency (EPA).
**ACTION:** Final rule.

**SUMMARY:** The Environmental Protection Agency (EPA) is finalizing modifications of certain compliance dates under the Renewable Fuel Standard (RFS) program. First, EPA is extending the RFS compliance reporting deadline and the associated attest engagement reporting deadline for the 2019 compliance year for small refineries only. Second, EPA is extending the RFS compliance reporting deadline and the associated attest engagement reporting deadline for the 2020, 2021, and 2022 compliance years for all obligated parties. Finally, EPA is changing the way in which future RFS compliance and attest engagement reporting deadlines are determined.

**DATES:**

*Effective date:* The amendatory instructions in this final rule are effective on January 31, 2022.

*Operational dates:* For operational purposes under the Clean Air Act (CAA), this final rule is effective as of January 27, 2022.

**ADDRESSES:** EPA has established a docket for this action under Docket ID No. EPA–HQ–OAR–2021–0793. All documents in the docket are listed on the *https://www.regulations.gov* website. Although listed in the index, some information is not publicly available, *e.g.,* confidential business information (CBI) or other information whose disclosure is restricted by statute. Certain other material is not available on the internet and will be publicly available only in hard copy form. Publicly available docket materials are available electronically through *https://www.regulations.gov.*

**FOR FURTHER INFORMATION CONTACT:** For questions regarding this action, contact Karen Nelson, Office of Transportation and Air Quality, Compliance Division, Environmental Protection Agency, 2000 Traverwood Drive, Ann Arbor, MI 48105; telephone number: (734) 214–4657; email address: *nelson.karen@epa.gov.*

**SUPPLEMENTARY INFORMATION:**

**Dates**

Section 553(d) of the Administrative Procedure Act (APA), 5 U.S.C. chapter 5, generally provides that rules may not take effect until 30 days after they are published in the **Federal Register**. EPA is issuing this final rule under CAA section 307(d), which states, "The provisions of section 553 through 557 . . . of Title 5 shall not, except as expressly provided in this section, apply to actions to which this subsection applies." Thus, section 553(d) of the APA does not apply to this rule. EPA is nevertheless acting consistently with the policies underlying APA section 553(d) in making this final rule effective upon signature. The purpose of this APA provision is to "give affected parties a reasonable time to adjust their behavior before the final rule takes effect." *Omnipoint Corp.* v. *Fed. Commc'n Comm'n,* 78 F.3d 620, 630 (D.C. Cir. 1996); see also *United States* v. *Gavrilovic,* 551 F.2d 1099, 1104 (8th Cir. 1977) (quoting legislative history). However, when an agency grants or recognizes an exemption or relieves a restriction, affected parties do not need a reasonable time to adjust because the effect is not adverse. Thus, APA section 553(d) allows an effective date less than 30 days after publication for any rule that "grants or recognizes an exemption or relieves a restriction" (see 5 U.S.C. 553(d)(1)). An accelerated effective date

USCA Case #22-1015   Document #1934274    Filed: 02/04/2022    Page 5 of 14

may also be appropriate for good cause pursuant to APA section 553(d)(3) where an agency can ''balance the necessity for immediate implementation against principles of fundamental fairness which require that all affected persons be afforded a reasonable amount of time to prepare for the effective date of its ruling.'' *Gavrilovic,* 551 F.2d at 1105.

EPA has determined that the regulatory amendments to 40 CFR part 80, subpart M, are effective upon signature because they relieve a restriction by extending the 2019–2022 compliance reporting deadlines (and associated attest engagement report deadlines) ahead of the otherwise imminent 2020 and 2021 compliance reporting deadlines (January 31, 2022, and March 31, 2023, respectively), thereby providing obligated parties with additional time to demonstrate compliance.[1] There is additionally good cause for immediate implementation of these provisions such that they are effective in advance of the finalization of two different but related RFS actions, as this will ensure regulated parties have clarity on their present and future RFS obligations before they are required to demonstrate compliance for the years at issue. First, EPA has proposed to deny all pending small refinery exemption (SRE) petitions, including 29 petitions for 2019.[2] There is therefore good cause for this action to be effective upon signature to extend the regulatory deadline for small refineries to comply with their 2019 obligations (previously November 30, 2021) because EPA believes that the most equitable approach for the small refineries that have pending SRE petitions is to take final action on those petitions before small refineries are required to comply with their 2019 obligations. Second, EPA has proposed to revise the 2020 standards as well as to establish the 2021 and 2022 standards.[3] There is good cause for this action to be effective upon signature to relieve regulated entities of the requirement to comply with their 2020 obligations that may be modified by the final 2020–2022 rule; any delay in the effectiveness of this action past January 31, 2022, would result in confusion among regulated entities regarding the timing of their compliance obligations.

**Does this action apply to me?**

Entities potentially affected by this final rule are those involved with the production, distribution, and sale of transportation fuels, including gasoline, diesel, and renewable fuels such as ethanol, biodiesel, renewable diesel, and biogas. Potentially affected categories include:

| Category | NAICS[1] code | Examples of potentially affected entities |
|---|---|---|
| Industry | 324110 | Petroleum refineries. |
| Industry | 325193 | Ethyl alcohol manufacturing. |
| Industry | 325199 | Other basic organic chemical manufacturing. |
| Industry | 424690 | Chemical and allied products merchant wholesalers. |
| Industry | 424710 | Petroleum bulk stations and terminals. |
| Industry | 424720 | Petroleum and petroleum products merchant wholesalers. |
| Industry | 221210 | Manufactured gas production and distribution. |
| Industry | 454319 | Other fuel dealers. |

[1] North American Industry Classification System (NAICS).

This table is not intended to be exhaustive, but rather provides a guide for readers regarding entities likely to be affected by this action. This table lists the types of entities that EPA is now aware could potentially be affected by this action. Other types of entities not listed in the table could also be affected. To determine whether your entity would be affected by this action, you should carefully examine the applicability criteria in 40 CFR part 80. If you have any questions regarding the applicability of this action to a particular entity, consult the person listed in the **FOR FURTHER INFORMATION CONTACT** section.

**Table of Contents**

I. Background and Extension of Deadlines
  A. Extension of the 2019 RFS Compliance Reporting Deadline for Small Refineries
  B. Extension of the 2020, 2021, and 2022 RFS Compliance Reporting Deadline for All Obligated Parties
  C. Corresponding Attest Engagement Reporting Deadlines
  D. Annual Compliance and Attest Engagement Reporting Deadlines Based on Effective Date
  E. Severability
II. Statutory and Executive Order Reviews
  A. Executive Order 12866: Regulatory Planning and Review and Executive Order 13563: Improving Regulation and Regulatory Review
  B. Paperwork Reduction Act (PRA)
  C. Regulatory Flexibility Act (RFA)
  D. Unfunded Mandates Reform Act (UMRA)
  E. Executive Order 13132: Federalism
  F. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments
  G. Executive Order 13045: Protection of Children From Environmental Health Risks and Safety Risks
  H. Executive Order 13211: Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use
  I. National Technology Transfer and Advancement Act (NTTAA) and 1 CFR Part 51
  J. Executive Order 12898: Federal Actions To Address Environmental Justice in Minority Populations and Low-Income Populations
  K. Congressional Review Act (CRA)
III. Statutory Authority

**I. Background and Extension of Deadlines**

The RFS regulations establish deadlines for obligated parties with renewable volume obligations (RVOs) to submit annual compliance reports to EPA, and later deadlines for the same parties to submit associated attest engagement reports. Under the previous RFS regulations, obligated parties needed to submit compliance reports for each calendar year by March 31 of the following year and the associated attest engagements by June 1 of the following year.[4] On April 1, 2021, EPA extended the deadlines for small refineries to demonstrate compliance with their 2019 RFS obligations and for all obligated parties to demonstrate compliance with their 2020 RFS obligations.[5] In that same action, we also extended the deadlines for the corresponding attest engagements reports.[6]

On November 26, 2021, we again proposed to extend certain reporting deadlines applicable to the 2019 and 2020 compliance years, and additionally to extend certain reporting deadlines for the 2021 compliance year, due to continued delay in the promulgation of the 2021 and 2022 standards and uncertainty around EPA's SRE policy.[7] Following this proposal, on December 14, 2021, we issued the Proposed SRE Denial, proposing to deny all pending SRE petitions. And on December 21, 2021, we proposed the 2020–2022 rule to establish the 2021 and 2022 standards and to modify the 2020 standards.

Table I–1 summarizes the new annual compliance and attest engagement reporting deadlines for the 2019–2022 compliance years that EPA is finalizing.

---

[1] This action postdates the previous 2019 compliance reporting deadline of November 30, 2021 (86 FR 17073, 17074; April 1, 2021).

[2] 86 FR 70999 (December 14, 2021) (hereinafter ''the Proposed SRE Denial'').

[3] 86 FR 72436 (December 21, 2021) (hereinafter ''the 2020–2022 rule'').

[4] See 40 CFR 80.1451(a) and 80.1464(d).

[5] 86 FR 17073 (April 1, 2021).

[6] *Id.*

[7] 86 FR 67419 (November 26, 2021).

Obligated party commenters generally supported our proposal to extend the compliance deadlines, although some suggested that longer compliance deadline extensions would be helpful. In contrast, biofuels industry groups opposed our proposal and suggested that extensions were not necessary or disruptive to the program. We have considered these comments, and in some cases (*i.e.,* 2022 deadlines), slightly adjusted our regulations in response to the comments.[8]

TABLE I–1—SUMMARY OF RFS ANNUAL COMPLIANCE AND ATTEST ENGAGEMENT REPORTING DEADLINES FOR OBLIGATED PARTIES FOR 2019–2022

| Compliance year | Obligated party | Annual compliance reporting deadline | Attest engagement reporting deadline |
|---|---|---|---|
| 2019 | All obligated parties (except small refineries). | March 31, 2020 | June 1, 2020. |
| 2019 | Small refineries | Next quarterly reporting deadline [a] after the effective date of the 2021 standards. | Next June 1 annual attest engagement reporting deadline after the 2019 compliance reporting deadline for small refineries. |
| 2020 | All obligated parties | Next quarterly reporting deadline after the 2019 compliance reporting deadline for small refineries. | Next June 1 annual attest engagement reporting deadline after the 2020 compliance reporting deadline. |
| 2021 | All obligated parties | Next quarterly reporting deadline after the 2020 compliance reporting deadline. | Next June 1 annual attest engagement reporting deadline after the 2021 compliance reporting deadline. |
| 2022 | All obligated parties | Next quarterly reporting deadline after either the effective date of the 2023 standards or the 2021 compliance reporting deadline, whichever is later. | Next June 1 annual attest engagement reporting deadline after the 2022 compliance reporting deadline. |

[a] The RFS quarterly reporting deadlines are March 31, June 1, September 1, and December 1, as specified in 40 CFR 80.1451(f)(2).

We are also finalizing a new approach to setting reporting deadlines for obligated parties that will automatically establish the annual compliance and attest engagement reporting deadlines for a given compliance year based on the effective date of the subsequent compliance year's standards, if such a date is after the March 31 regulatory deadline. We discuss this new approach in more detail in section I.D. Comments from both obligated parties and biofuels industry groups generally opposed the automatic extensions of the reporting deadlines. One obligated party commenter stated that an approach for automatic extensions should instead be considered as part of EPA's upcoming "Set Rule" for years 2023 and beyond. Biofuels industry groups stated that creating a system for automatic extensions of the reporting deadlines would disincentivize EPA from promulgating future-year standards on time. We have considered these comments, but we have concluded that having regulations in place that remove one source of uncertainty in the RFS program, were EPA to ever again be late in promulgating standards, is in the best interest of our implementation of the program, as it will render future rulemakings like this one to extend compliance deadlines unnecessary and prevent placing an unnecessary burden on obligated parties to prepare, submit, and then possibly retract and revise compliance reports for deadlines that were later extended. Therefore, we are finalizing our approach as proposed.[9]

### A. Extension of the 2019 RFS Compliance Reporting Deadline for Small Refineries

For small refineries, we are extending the 2019 compliance reporting deadline to the next quarterly reporting deadline after the effective date of the 2021 standards, as proposed.[10] In December 2021, EPA proposed two RFS actions that, if finalized, are likely to affect 2019 compliance for small refineries. First, in the 2020–2022 rule, we proposed to lower the existing 2020 standards. As explained in that proposal, this revision is justified by decreased transportation fuel demand due to the COVID–19 pandemic and due to a potential change in approach to how EPA evaluates SRE petitions compared to the policy that was in place at the time the 2020 standards were finalized. Second, in the Proposed SRE Denial, we proposed to deny all pending SRE petitions currently before EPA.[11] The comment periods for these actions close after both the previous 2019 compliance deadline for small refineries and the previous 2020 compliance deadline for all obligated parties. Because we have not yet made a final decision on the SRE petitions nor finalized changes to the 2020 standards, and given the continued uncertainty surrounding SREs under the RFS program, we are finalizing our proposed extension of the 2019 compliance deadline until the next quarterly reporting deadline after the 2021 standards become effective.[12] We note also that, if we adjust the 2020 standards downward as proposed in the 2020–2022 rule, additional Renewable Identification Numbers (RINs) will likely become available in the marketplace for small refineries to demonstrate compliance with their 2019 obligations.

As an example of the potential timing of this deadline, if the final rule establishing the 2021 standards is published in the **Federal Register** on May 15, 2022, then the effective date of the 2021 standards would be 60 days later on July 14, 2022, and the 2019 compliance reporting deadline for small refineries would be September 1, 2022, because that would be the next quarterly reporting deadline after the effective date of the 2021 standards.[13] We are

---

[8] Further discussion of the comments received, and our responses to them, can be found in the Response to Comments document, available in the docket for this action.

[9] Further discussion of the comments received on the automatic reporting deadline extensions, and our responses to them, can be found in section 3 of the Response to Comments document, available in the docket for this action.

[10] The effective date of 2021 standards is generally expected to be 60 days after publication of the action establishing the standards in the **Federal Register**.

[11] EPA currently has before it over 60 SRE petitions for 2019–2021.

[12] A small refinery may petition EPA for an exemption from its RFS obligations under 40 CFR 80.1441(e)(2).

[13] Table I.C–1 illustrates this example deadline for 2019 based on an effective date of July 14, 2022.

tying the 2019 compliance reporting deadline to the effective date of the 2021 standards to allow for the proper sequencing of deadlines such that 2019 compliance will be complete prior to 2020 compliance, and 2020 compliance will be complete prior to 2021 compliance, given the continued delay in promulgating the 2021 standards. As noted earlier, we proposed to revise the 2020 standards in the 2020–2022 rule; thus, the 2020 standards may be revised along with the promulgation of the 2021 standards. The compliance schedule finalized in this action sequences the 2019 and 2020 compliance reporting deadlines to eliminate the need for small refineries to demonstrate compliance with their 2020 obligations before EPA takes a final action on revising the 2020 standards.

On January 24, 2020, the U.S. Court of Appeals for the Tenth Circuit issued a decision in *Renewable Fuels Association* v. *EPA* (*RFA*) invalidating on multiple grounds three SREs granted by EPA.[14] The small refineries whose SREs were invalidated by the court in the *RFA* case sought rehearing from the Tenth Circuit, which was denied on April 7, 2020.[15] Thus, the Tenth Circuit's decision was not final until after the 2019 compliance reporting deadline of March 31, 2020, had already passed. On September 4, 2020, the small refinery intervenors in that suit filed a petition for a writ of certiorari from the U.S. Supreme Court, which was granted on January 8, 2021, in *HollyFrontier* v. *RFA*.[16] On June 25, 2021, the Supreme Court issued its opinion in *HollyFrontier*.[17] In line with this case law, EPA has proposed to deny all of the pending SRE petitions in the Proposed SRE Denial, but as the comment period for that action is still ongoing, EPA has not yet made a final decision and there remains uncertainty about the resolution of the 2019 and other pending SRE petitions at this time.

Therefore, we believe it appropriate to extend the 2019 compliance reporting deadline for small refineries as proposed. Additionally, because we proposed to modify the 2020 standards in the 2020–2022 rule, RIN availability in the market is likely to change due to the two-year ''lifespan'' of RINs. Obligated parties may satisfy up to 20 percent of their individual 2020 obligations through the use of 2019 RINs. If finalized, our proposed reductions to the 2020 volumes would likely result in additional 2019 RINs being available in the market as parties make adjustments to their RIN holdings. These 2019 RINs could thus become available to small refineries for compliance with their 2019 RFS obligations. We believe that it is appropriate to extend the 2019 compliance reporting deadline only for small refineries because it is only their compliance requirements that have been affected by the recent *HollyFrontier* and *RFA* decisions. We are extending this flexibility to all small refineries regardless of whether they have an SRE petition for 2019 pending before EPA. All other obligated parties' compliance obligation deadlines for 2019 have already passed and remain unchanged.[18]

We recognize that some small refineries have already submitted their 2019 compliance reports. However, we will allow all small refineries to revisit their 2019 compliance reports before their new 2019 compliance reporting deadline. This means that if a small refinery carried forward a deficit to demonstrate compliance for 2019 by November 30, 2021, but later receives an SRE for 2019 or retires RINs in accordance with its RVOs, that initial decision to carry forward a deficit will not constitute a carry-forward deficit (*i.e.,* failing to meet the requirement to retire sufficient RINs as described in 40 CFR 80.1427(a)(1)) that would make the small refinery ineligible to do the same for 2020 under 40 CFR 80.1427(b). Small refineries that did not submit a compliance report by November 30, 2021, will need to submit a compliance report to comply with the new 2019 compliance reporting deadline, unless they receive an exemption for 2019.

This deadline extension will apply only to those parties who meet the definition of small refinery in Clean Air Act (CAA) section 211(o)(1)(k) and 40 CFR 80.1441(e)(2)(iii) for the 2019 compliance year. Limiting the extension in this way is appropriate because only small refineries' compliance obligations are affected by the *HollyFrontier* and *RFA* opinions and it is consistent with our eligibility requirements regarding SREs. We recognize that, in recent years, we have determined that some parties who have petitioned for SREs have been deemed ineligible by EPA, often due to the refinery's throughput (*i.e.,* more than 75,000 barrels of crude oil per day) or the nature of their business (*i.e.,* not a petroleum refinery). The parties that EPA has found ineligible because they do not meet the definition of small refinery in recent years will similarly not be eligible for the 2019 compliance date extension for small refineries.

We note that all of the existing regulatory flexibilities for small refineries—including the ability to satisfy up to 20 percent of their 2019 RVOs using 2018 carryover RINs under 40 CFR 80.1427(a)(5) and the ability to carry forward a deficit from 2019 to 2020 if they did not carry forward a deficit from 2018 under 40 CFR 80.1427(b)—continue to be available to them to demonstrate compliance for 2019 by the new 2019 compliance reporting deadline. This means that small refineries that carried forward a deficit for 2019 in their initial 2019 compliance reports (filed in 2020 or 2021) can reverse that decision in new compliance reports and retain their ability to carry forward a deficit for 2020. It also means that small refineries that did not submit a 2019 compliance report by November 30, 2021, can also carry forward a deficit for 2020. Finally, small refineries can either carry forward a deficit for 2019 (if they did not do so for 2018) or for 2020 (if they do not do so for 2019).

### B. Extension of the 2020, 2021, and 2022 RFS Compliance Reporting Deadline for All Obligated Parties

As proposed, we are finalizing the extension of the 2020 compliance reporting deadline for all obligated parties from January 31, 2022, to the next quarterly reporting deadline after the 2019 compliance reporting deadline for small refineries, and the extension of the 2021 compliance reporting deadline for all obligated parties from March 31, 2022, to the next quarterly reporting deadline after the 2020 compliance reporting deadline. Also, in response to comments and in order to ensure proper sequencing of the compliance reporting deadlines, we are extending the 2022 compliance reporting deadline for all obligated parties from March 31, 2023, to the next quarterly reporting deadline after either the effective date of the 2023 standards or the 2021 compliance reporting deadline, whichever is later. We are doing so because EPA has not yet established the 2021 or 2022 standards, including applicable volumes, and we recognize the importance to obligated parties of planning their compliance for a given calendar year by understanding their obligations for the years before and

---

[14] *Renewable Fuels Ass'n* v. *EPA,* 948 F.3d 1206 (10th Cir. 2020) (*RFA*).

[15] Order, *RFA,* No. 18–9533 (10th Cir. Apr. 7, 2020).

[16] *HollyFrontier Cheyenne Refining, LLC* v. *Renewable Fuels Ass'n,* 114 S.Ct. 2172 (2021).

[17] *Id.* at 2181.

[18] The 2019 compliance and attest engagement reporting deadlines were March 31, 2020, and June 1, 2020, respectively.

after.[19] This is particularly true given the two-year ''lifespan'' for RINs, such that 2020 RINs can be used for compliance with either 2020 or 2021 obligations. Compliance obligations for 2021 and 2022 will remain unknown until EPA finalizes the 2021 and 2022 standards. Additionally, EPA has proposed to modify the 2020 standards in the 2020–2022 rule. Delaying the 2020 compliance deadline until after EPA completes its revision of the 2020 standards would avoid unnecessary RIN retirements and corresponding unretirements due to potential modification of the standards. Finally, several commenters noted that it is likely that the 2022 compliance reporting deadline will be affected by the new sequencing of the 2019, 2020, and 2021 compliance reporting deadlines, and recommended that EPA take the same approach to extending the 2022 deadline as for 2020 and 2021. We agree with the commenters and are extending the 2022 compliance reporting deadline as well. However, unlike 2019, 2020, and 2021, for 2022 we have not yet proposed the subsequent year's standards (*i.e.,* the 2023 standards). Therefore, we are establishing the 2022 compliance reporting deadline as the next quarterly reporting deadline after either the effective date of the 2023 standards or the 2021 compliance reporting deadline, whichever is later. This will ensure that obligated parties know their 2023 obligations before complying with their 2022 obligations, consistent with our approach for 2019–2021.

These deadline extensions will allow proper sequencing of the compliance dates. It will allow small refineries to complete compliance with their 2019 obligations before having to comply with their 2020 RFS obligations. It will also allow for obligated parties to make additional RIN acquisitions, transfers, transactions, and retirements prior to the compliance reporting deadlines by providing at least 60 days between each of the 2019–2022 compliance reporting deadlines.

Using the prior example, if the final rule establishing the 2021 standards has an effective date of July 14, 2022, the 2019 compliance reporting deadline for small refineries would be September 1, 2022. Furthermore, by operation of law, under this scenario, the 2020 compliance reporting deadline for all obligated parties would be December 1, 2022, the 2021 compliance reporting deadline would be March 31, 2023, and the 2022 compliance reporting deadline would be June 1, 2023.[20]

### C. Corresponding Attest Engagement Reporting Deadlines

We are finalizing the deadline extension for attest engagement reports required under 40 CFR 80.1464(g) for small refineries for 2019 compliance demonstrations and for all obligated parties for 2020 and 2021 compliance demonstrations to the next June 1 annual attest engagement reporting deadline after the applicable 2019–2021 compliance reporting deadline. Also, in response to comments and in order to ensure proper sequencing of the attest engagement reporting deadlines, we are extending the 2022 attest engagement reporting deadline for all obligated parties from June 1, 2023, to the next June 1 annual attest engagement reporting deadline after the 2022 compliance reporting deadline. Using the prior example where the final rule establishing the 2021 standards has an effective date of July 14, 2022, under this approach, the 2019 attest engagement reporting deadline for small refineries and the 2020 and 2021 attest engagement reporting deadline for all obligated parties would be due on June 1, 2023, and the 2022 attest engagement reporting deadline for all obligated parties would be due on June 1, 2024.

We are extending these attest engagement reporting deadlines to ensure enough time for attest auditors to reasonably conduct the 2019, 2020, 2021, and 2022 attest engagement reports. Because the annual attest engagement reporting deadline occurs only once each year (June 1), it is likely that with the new compliance deadline extensions, several of the affected 2019, 2020, 2021, and 2022 attest engagement reports will be due on the same June 1 deadline (either in 2023 or 2024). This change will therefore minimize confusion and maximize efficiency for the attest auditors to conduct and prepare reports.

Table I.C–1 illustrates the example deadlines for the 2019–2022 annual compliance and attest engagement reporting deadlines. Note that these dates do not represent the actual reporting deadlines, which will be based on the effective date of the 2021 standards. We will post the actual reporting deadlines on our reporting deadlines website.[21]

TABLE I.C–1—EXAMPLE RFS ANNUAL COMPLIANCE AND ATTEST ENGAGEMENT REPORTING DEADLINES FOR OBLIGATED PARTIES [a]

| Compliance year | Obligated party | Annual compliance reporting deadline | Attest engagement reporting deadline |
|---|---|---|---|
| 2019 | All obligated parties (except small refineries) | March 31, 2020 | June 1, 2020. |
| 2019 | Small refineries | September 1, 2022 | June 1, 2023. |
| 2020 | All obligated parties | December 1, 2022 | June 1, 2023. |
| 2021 | All obligated parties | March 31, 2023 | June 1, 2023. |
| 2022 | All obligated parties | June 1, 2023 | June 1, 2024. |

[a] Example based on an effective date of July 14, 2022, for the final rule establishing the 2021 standards.

### D. Annual Compliance and Attest Engagement Reporting Deadlines Based on Effective Date

For annual compliance and annual attest engagement reporting deadlines for 2023 and beyond, we are finalizing the same approach as that outlined above for 2019–2022. Under this approach, for 2023 and beyond, the annual compliance reporting deadline will be the latest date of the following:

• March 31st of the subsequent calendar year;

---

[19] For discussion of obligated parties' interest in such extensions in past actions, see 80 FR 33100, 33149–50 (June 10, 2015) and 78 FR 49794, 49823 (August 15, 2013).

[20] Table I.C–1 illustrates these example deadlines for 2020, 2021, and 2022 based on an effective date of July 14, 2022.

[21] The reporting deadlines website is available at: *https://www.epa.gov/fuels-registration-reporting-and-compliance-help/reporting-deadlines-fuel-programs.*

• The next quarterly reporting deadline after the effective date of the subsequent compliance year's standards (typically 60 days after publication of the final rule in the **Federal Register**); or

• The next quarterly reporting deadline under 40 CFR 80.1451(f)(2) after the annual compliance reporting deadline for the prior compliance year.

Under this approach, which is consistent with the proposal, the annual compliance reporting deadline will also be at least 60 days after publication of the subsequent year's standards in the **Federal Register** and 60 days after the prior year's compliance reporting deadline. This approach will also avoid EPA having to repeatedly extend compliance reporting deadlines for obligated parties should promulgation of the subsequent year's standards be delayed, and will provide regulatory certainty for obligated parties. We will continue to strive to promulgate the standards for a given compliance year prior to the beginning of that year, and the provisions finalized in this action will apply only in the unusual circumstance where promulgation of the following year's standards are significantly delayed.

Similarly, for 2023 and beyond, we are tying the annual attest engagement reporting deadline to the effective date of the standards in the same manner as finalized for the 2019–2022 annual attest engagement reporting deadlines, which will make it the latest date of the following:

• June 1 of the subsequent calendar year; or

• The next June 1 annual attest engagement reporting deadline after the annual compliance reporting deadline.

Under this approach, annual attest engagement reports will be due at least 60 days after the annual compliance reporting deadline like under the current regulations.

To help communicate the annual compliance and annual attest engagement reporting deadlines, we will also post the annual compliance and annual attest engagement reporting deadlines on our website.[22]

*E. Severability*

We intend for our action in this final rule modifying the compliance reporting deadlines for 2019 for small refineries and 2020, 2021 and 2022 for all obligated parties, as well as the associated annual attest engagement reporting deadlines, to be severable from our modifications of the regulations relating to future compliance deadlines (*i.e.,* for compliance years 2023 and beyond).

## II. Statutory and Executive Order Reviews

Additional information about these statutes and Executive orders can be found at *https://www.epa.gov/laws-regulations/laws-and-executive-orders.*

*A. Executive Order 12866: Regulatory Planning and Review and Executive Order 13563: Improving Regulation and Regulatory Review*

This action is not a significant regulatory action and was therefore not submitted to the Office of Management and Budget (OMB) for review.

*B. Paperwork Reduction Act (PRA)*

This action does not impose any new information collection burden under the PRA. OMB has previously approved the information collection activities contained in the existing regulations and has assigned OMB control number 2060–0725 and 2060–0723. This action only makes a one-time change in the compliance dates for certain regulated parties and adjusts the due date of their compliance reports and attest engagements to reflect this change. It does not change the information to be collected or increase the frequency of collection.

*C. Regulatory Flexibility Act (RFA)*

I certify that this action will not have a significant economic impact on a substantial number of small entities under the RFA. In making this determination, EPA concludes that the impact of concern for this rule is any significant adverse economic impact on small entities and that the agency is certifying that this rulemaking will not have a significant economic impact on a substantial number of small entities if the rule has no net burden on the small entities subject to the rule. This action extends the RFS compliance and attest engagement reporting deadlines. We do not anticipate that there will be any costs associated with these changes. We have therefore concluded that this action will have no net regulatory burden for all directly regulated small entities.

*D. Unfunded Mandates Reform Act (UMRA)*

This action does not contain an unfunded mandate of $100 million or more as described in UMRA, 2 U.S.C. 1531–1538, and does not significantly or uniquely affect small governments. This action imposes no enforceable duty on any state, local or tribal governments. Requirements for the private sector do not exceed $100 million in any one year.

*E. Executive Order 13132: Federalism*

This action does not have federalism implications. It will not have substantial direct effects on the states, on the relationship between the National Government and the states, or on the distribution of power and responsibilities among the various levels of government.

*F. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments*

This action does not have tribal implications as specified in Executive Order 13175. This rule only affects RFS obligated parties. Thus, Executive Order 13175 does not apply to this action.

*G. Executive Order 13045: Protection of Children From Environmental Health Risks and Safety Risks*

EPA interprets Executive Order 13045 as applying only to those regulatory actions that concern environmental health or safety risks that EPA has reason to believe may disproportionately affect children, per the definition of ''covered regulatory action'' in section 2–202 of the Executive order. This action is not subject to Executive Order 13045 because it does not concern an environmental health risk or safety risk.

*H. Executive Order 13211: Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use*

This action is not subject to Executive Order 13211, because it is not a significant regulatory action under Executive Order 12866.

*I. National Technology Transfer and Advancement Act (NTTAA) and 1 CFR Part 51*

This action does not involve technical standards.

*J. Executive Order 12898: Federal Actions To Address Environmental Justice in Minority Populations and Low-Income Populations*

The EPA believes that this action is not subject to Executive Order 12898 (59 FR 7629, February 16, 1994) because it does establish an environmental health or safety standard. This action addresses the RFS compliance and attest

---

[22] Information related to annual compliance and attest engagement reporting is available at: *https://www.epa.gov/fuels-registration-reporting-and-compliance-help/reporting-fuel-programs.* The annual compliance and attest engagement reporting deadlines will be posted at: *https://www.epa.gov/fuels-registration-reporting-and-compliance-help/reporting-deadlines-fuel-programs.*

engagement reporting deadlines and does not impact the standards themselves.

*K. Congressional Review Act (CRA)*

This action is subject to the CRA, and the EPA will submit a rule report to each House of the Congress and to the Comptroller General of the United States. This action is not a ''major rule'' as defined by 5 U.S.C. 804(2).

### III. Statutory Authority

Statutory authority for this action comes from section 211(o) of the Clean Air Act, 42 U.S.C. 7545(*o*).

### List of Subjects in 40 CFR Part 80

Environmental protection, Administrative practice and procedure, Air pollution control, Diesel fuel, Fuel additives, Gasoline, Imports, Oil imports, Penalties, Petroleum, Renewable fuel, Reporting and recordkeeping requirements.

Dated: January 27, 2022.

**Michael S. Regan,**
*Administrator.*

For the reasons set forth in the preamble, EPA amends 40 CFR part 80 as follows:

## PART 80—REGULATION OF FUELS AND FUEL ADDITIVES

■ 1. The authority citation for part 80 continues to read as follows:

**Authority:** 42 U.S.C. 7414, 7521, 7542, 7545, and 7601(a).

### Subpart M—Renewable Fuel Standard

■ 2. Amend § 80.1451 by:
■ a. Revising paragraph (a)(1) introductory text;
■ b. Removing and reserving paragraph (a)(1)(xiv);
■ c. Revising paragraph (f) introductory text; and
■ d. Adding paragraph (f)(1) and headings for paragraphs (f)(2) and (3).

The revisions and additions read as follows:

### § 80.1451  What are the reporting requirements under the RFS program?

(a) * * *
(1) Annual compliance reports must include all the following information:
* * * * *
(f) *Report submission deadlines.* The submission deadlines for annual and quarterly reports are as follows:
(1) *Annual compliance reports*—(i) *Obligated parties.* (A) Except as specified in paragraph (f)(1)(i)(B) of this section, for obligated parties, annual compliance reports must be submitted by whichever of the following dates is latest:

(*1*) March 31 of the subsequent calendar year.
(*2*) The next quarterly reporting deadline under paragraph (f)(2) of this section after the date the subsequent compliance year's renewable fuel standards become effective in § 80.1405(a).
(*3*) The next quarterly reporting deadline under paragraph (f)(2) of this section after the annual compliance reporting deadline for the prior compliance year.
(B)(*1*) For obligated parties that meet the requirements for a small refinery under § 80.1441(e)(2)(iii), for the 2019 compliance year, annual compliance reports must be submitted no later than the next quarterly reporting deadline under paragraph (f)(2) of this section after the date the 2021 renewable fuel standards become effective in § 80.1405(a).
(*2*) For the 2020 compliance year, annual compliance reports must be submitted no later than the next quarterly reporting deadline in paragraph (f)(2) of this section after the deadline in paragraph (f)(1)(i)(B)(*1*) of this section.
(*3*) For the 2021 compliance year, annual compliance reports must be submitted no later than the next quarterly reporting deadline in paragraph (f)(2) of this section after the deadline in paragraph (f)(1)(i)(B)(*2*) of this section.
(*4*) For the 2022 compliance year, annual compliance reports must be submitted by whichever of the following dates is latest:
(*i*) The next quarterly reporting deadline under paragraph (f)(2) of this section after the date the 2023 renewable fuel standards become effective in § 80.1405(a).
(*ii*) The next quarterly reporting deadline in paragraph (f)(2) of this section after the deadline in paragraph (f)(1)(i)(B)(*3*) of this section.
(ii) *All other parties.* For all parties other than obligated parties, annual compliance reports must be submitted by March 31 of the subsequent year.
(iii) *Deadline publication.* The annual compliance reporting deadline will be calculated in accordance with paragraph (f)(1)(i) of this section and published on EPA's website.
(2) *Quarterly compliance reports.*
* * *
(3) *Report certification.* * * *
* * * * *
■ 3. Amend § 80.1464 by:
■ a. Revising paragraph (d); and
■ b. Removing and reserving paragraph (g); and
■ c. Removing paragraph (i)(3).

The revision reads as follows:

### § 80.1464  What are the attest engagement requirements under the RFS program?

* * * * *
(d) *Report submission deadlines*—(1) *Obligated parties.* (i) Except as specified in paragraph (d)(1)(ii) of this section, for obligated parties, annual attest engagement reports must be submitted to EPA by whichever of the following dates is latest:
(A) June 1 of the subsequent calendar year.
(B) The next June 1 annual attest engagement reporting deadline after the annual compliance reporting deadline under § 80.1451(f)(1)(i)(A).
(ii)(A) For obligated parties that meet the requirements for a small refinery under § 80.1441(e)(2)(iii), for the 2019 compliance year, annual attest engagement reports must be submitted to EPA no later than the next June 1 annual attest engagement reporting deadline after the annual compliance reporting deadline under § 80.1451(f)(1)(i)(B)(*1*).
(B) For obligated parties, for the 2020 compliance year, annual attest engagement reports must be submitted to EPA no later than the next June 1 annual attest engagement reporting deadline after the annual compliance reporting deadline under § 80.1451(f)(1)(i)(B)(*2*).
(C) For obligated parties, for the 2021 compliance year, annual attest engagement reports must be submitted to EPA no later than the next June 1 annual attest engagement reporting deadline after the annual compliance reporting deadline under § 80.1451(f)(1)(i)(B)(*3*).
(D) For obligated parties, for the 2022 compliance year, annual attest engagement reports must be submitted to EPA no later than the next June 1 annual attest engagement reporting deadline after the annual compliance reporting deadline under § 80.1451(f)(1)(i)(B)(*4*).
(2) *All other parties.* All parties other than obligated parties must submit annual attest engagement reports to EPA by June 1 of the subsequent calendar year.
(3) *Deadline publication.* The annual attest engagement reporting deadline will be calculated in accordance with paragraph (d)(1) of this section and published on EPA's website.
* * * * *

[FR Doc. 2022–02149 Filed 1–31–22; 8:45 am]
**BILLING CODE 6560–50–P**

# Exhibit B

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| WYNNEWOOD REFINING COMPANY, LLC, COFFEYVILLE RESOURCES REFINING & MARKETING, LLC,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>Respondent. | Case No. _____ |

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Petitioners Wynnewood Refining Company, LLC, and Coffeyville Resources Refining & Marketing, LLC, provide the following corporate disclosure statement:

**Wynnewood Refining Company, LLC,** is a wholly owned subsidiary of CVR Refining, LLC, a Delaware limited liability company. CVR Refining, LLC is a wholly owned subsidiary of CVR Refining, LP, which is an indirect wholly owned subsidiary of CVR Energy, Inc., a Delaware corporation that is publicly traded on the New York Stock Exchange under the symbol "CVI."

**Coffeyville Resources Refining & Marketing, LLC** ("Coffeyville Resources") is a limited liability company organized under the laws of Delaware.

Coffeyville Resources is a refiner of petroleum products and is an indirect wholly owned subsidiary of CVR Refining, LP, which is an indirect wholly owned subsidiary of CVR Energy, Inc., a Delaware corporation that is publicly traded on the New York Stock Exchange under the symbol "CVI."

Petitioners will file a revised corporate disclosure statement should they become aware of a change in corporate ownership interests that would affect the disclosures required by Rule 26.1.

Dated:  February 4, 2022

Respectfully submitted,

*s/ Jonathan G. Hardin*
Jonathan G. Hardin
LeAnn Johnson Koch
Alexandra Magill Bromer
Karl J. Worsham
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C.  20005-3960
Telephone:  202.654.6297
Facsimile:  202.654.6211
JHardin@perkinscoie.com
LeAnnJohnson@perkinscoie.com
ABromer@perkinscoie.com
kworsham@perkinscoie.com

Attorneys for Petitioners

# CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Appellate Procedure 3(d), 15(c) and 25, D.C. Circuit Rules 15(a) and 25, and 40 C.F.R. § 23.12(a), I hereby certify that on February 4, 2022, I will cause copies of the foregoing Petition for Review and Corporate Disclosure Statement to be served by certified mail, return receipt requested upon the following:

HON. MICHAEL S. REGAN, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

CORRESPONDENCE CONTROL UNIT
Office of General Counsel (2311)
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

HON. MERRICK GARLAND
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

HON. TODD SUNHWAE KIM
Assistant Attorney General
Environmental and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Dated:  February 4, 2022

                                                 *s/ Jonathan G. Hardin*
                                                 Jonathan G. Hardin
                                                 PERKINS COIE LLP